1  Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
2  LAW OFFICE OF MARK E. MERIN
3  1010 F Street, Suite 300
Sacramento, California 95814
4  Telephone:    (916) 443-6911
Facsimile:    (916) 447-8336
5  E-Mail:    mark@markmerin.com
    paul@markmerin.com
6

7  Attorneys for Plaintiffs
ESTATE OF TOMI KARTCHNER, S.B.,
8  KERRY CALVERT, and AARON KARTCHNER

9              UNITED STATES DISTRICT COURT

10            EASTERN DISTRICT OF CALIFORNIA

11                   FRESNO DIVISION

12 | ESTATE OF TOMI KARTCHNER, S.B., | Case No.
KERRY CALVERT, and AARON KARTCHNER, |
13 | | **COMPLAINT FOR VIOLATION OF**
| | **CIVIL AND CONSTITUTIONAL RIGHTS**
14 | Plaintiffs, |
| | **DEMAND FOR JURY TRIAL**
15 | vs. |
16 | COUNTY OF MERCED, MERCED COUNTY |
SHERIFF'S OFFICE, VERNON WARNKE, |
17 | CALIFORNIA FORENSIC MEDICAL GROUP |
dba WELLPATH, SAETERN KAO, TERESA |
18 | OLVERA, DYLAN FULCHER, and DOE 1 to 20, |
19 | |
| Defendants. |
20

21

22                   **INTRODUCTION**

23        28-year-old TOMI KARTCHNER was a documented mental health inmate in the custody of the

24  COUNTY OF MERCED at the John Latorraca Correctional Center, under the supervision of custody

25  staff from the MERCED COUNTY SHERIFF'S OFFICE and care of contracted medical staff from

26  CALIFORNIA FORENSIC MEDICAL GROUP (also known as or doing business as WELLPATH). The

27  custody and medical staff ignored TOMI KARTCHNER's medical and mental health needs and left her

28  unsupervised, resulting in death by suicide on May 25, 2023.

1

**JURISDICTION & VENUE**

1.      This Court has jurisdiction of the federal claims under 28 U.S.C. § 1331 (in that they arise under the United States Constitution) and 28 U.S.C. § 1343(a)(3) (in that the action is brought to address deprivations, under color of state authority, of rights, privileges, and immunities protected by the U.S. Constitution). This Court has supplemental jurisdiction of the state law claims under 28 U.S.C. § 1367.

2.      Venue is proper in the United State District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Eastern District of California and because many of the acts and/or omissions described herein occurred in the Eastern District of California.

3.      Intradistrict venue is proper in the Fresno Division of the Eastern District of California pursuant to Local Rule 120(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Merced, California.

**EXHAUSTION**

4.      On June 8, 2023, the ESTATE OF TOMI KARTCHNER, S.B., KERRY CALVERT, and AARON KARTCHNER submitted a substantially compliant government claim to the COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE relating to the claims asserted in this action. (Claim No. 2023-216.)

5.      On July 27, 2023, the COUNTY OF MERCED submitted a "Notice of Action on Claim" providing that the claim was "Rejected by Board of Supervisors Action on 7/27/2023."

6.      By July 27, 2023, the MERCED COUNTY SHERIFF'S OFFICE failed or refused to act on the claim within 45 days after the claim was presented, pursuant to California Government Code § 912.4.

**PARTIES**

7.      Plaintiff ESTATE OF TOMI KARTCHNER appears by and through the real-party-in-interest Plaintiff S.B., the biological daughter of TOMI KARTCHNER, who brings this action pursuant to California Code of Civil Procedure § 377.30. Plaintiff S.B. brings this action as the successor-in-interest on behalf of the decedent TOMI KARTCHNER. A declaration regarding Plaintiff S.B.'s status as TOMI KARTCHNER's successor-in-interest is attached, pursuant to California Code of Civil Procedure § 377.32.

8.     Plaintiff S.B. is a resident of the State of Oklahoma, County of Comanche. Plaintiff S.B. brings this action: (a) on behalf of TOMI KARTCHNER, in her representative capacity as the successor-in-interest; and (b) on behalf of herself, in her individual capacity. Plaintiff S.B. is the biological daughter of TOMI KARTCHNER and the heir to her estate under California law.

9.     Plaintiff KERRY CALVERT is a resident of the State of Arizona, County of Pima. Plaintiff KERRY CALVERT brings this action on behalf of herself, in her individual capacity. Plaintiff KERRY CALVERT is the biological mother of TOMI KARTCHNER.

10.    Plaintiff AARON KARTCHNER is a resident of the State of Alabama, County of Madison. Plaintiff AARON KARTCHNER brings this action on behalf of himself, in his individual capacity. Plaintiff AARON KARTCHNER is the biological father of TOMI KARTCHNER.

11.    Defendant COUNTY OF MERCED is located in the State of California. Defendant COUNTY OF MERCED is a "public entity," pursuant to California Government Code § 811.2.

12.    Defendant MERCED COUNTY SHERIFF'S OFFICE located in the State of California, County of Merced. Defendant MERCED COUNTY SHERIFF'S OFFICE is a "public entity," pursuant to California Government Code § 811.2.

13.    Defendant VERNON WARNKE is and was, at all times material herein, a law enforcement officer and Sheriff for Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE, acting within the scope of employment and under color of state law. Defendant VERNON WARNKE is sued in an individual capacity.

14.    Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, also-known-as CORRECTIONAL MEDICAL GROUP COMPANIES INC. and/or doing-business-as WELLPATH, INC., is a California corporation licensed to and doing business in the State of California, as a contracted provider of medical services to jail facilities operated by Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE.

15.    Defendant SAETERN KAO is and was, at all times material herein, an employee of/contractor for Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and/or CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH., acting within the scope of employment and under color of state law. Defendant SAETERN KAO is sued in an individual capacity.

3

16.     Defendant TERESA OLVERA is and was, at all times material herein, an employee of/contractor for Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and/or CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH., acting within the scope of employment and under color of state law. Defendant TERESA OLVERA is sued in an individual capacity.

17.     Defendant DYLAN FULCHER is and was, at all times material herein, an employee of/contractor for Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and/or CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH., acting within the scope of employment and under color of state law. Defendant DYLAN FULCHER is sued in an individual capacity.

18.     Defendants DOE 1 to 20 are and/or were agents or employees of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and/or CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, acting within the scope of agency or employment and under color of state law. Defendants DOE 1 to 20 are sued by fictitious names and their true and correct names and identities will be substituted when ascertained.

## GENERAL ALLEGATIONS

19.     At all times relevant herein, all wrongful acts described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

### Tomi Kartchner

20.     TOMI KARTCHNER was a 28-year-old woman, prior to her death on May 25, 2023.

21.     TOMI KARTCHNER cohabitated and shared a close relationship and special bond with her infant daughter, Plaintiff S.B., prior to her death.

22.     TOMI KARTCHNER shared a close relationship and special bond with her mother, Plaintiff KERRY CALVERT, and her father, Plaintiff AARON KARTCHNER, prior to her death.

23.     TOMI KARTCHNER suffered from diagnosed mental disabilities, including attention-deficit/hyperactivity disorder ("ADHD"), depression, anxiety, and suicidal ideation. TOMI KARTCHNER's disabilities required hospitalization and treatment on occasions prior to her death, and substantially limited one or more major life activities, including her ability to care for herself,

concentrate, think, and communicate.

24.     TOMI KARTCHNER had attempted suicide on prior occasions, due to her disabilities.

25.     TOMI KARTCHNER was prescribed medications for her mental disabilities, including for several years prior to her death.

26.     TOMI KARTCHNER's mental disabilities and associated symptoms were exacerbated when she became stressed or discontinued taking her medications.

**County of Merced**

27.     Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE operate and manage jail facilities within the County of Merced, including the John Latorraca Correctional Center.

28.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE are responsible for the actions and/or inactions and the policies and customs of their employees and agents, including responsibilities for ensuring the provision of emergency and basic medical and mental health care services to all inmates in their custody and care.

29.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE have authority to make contracts, to provide for jails and corrections, and to operate and/or be responsible for county health facilities, including jails, through contracts, joint ventures, or partnerships.

30.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE contract with Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH to provide medical care to inmates in jail facilities, including the John Latorraca Correctional Center.

31.     Defendant CALIFORNIA FORENSIC MEDICAL GROUP (now known as Defendant WELLPATH and H.I.G. through its executives, officers, leadership, employees, agents and representatives), provides a governmental function and stands in the same capacity as Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE in carrying out duties at jail facilities, including the John Latorraca Correctional Center.

32.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and

5

1   VERNON WARNKE, jointly with Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba

2   WELLPATH, were and are responsible to develop joint policies and procedures affecting inmates

3   requiring medical care and treatment in custody and to provide continuity of care from the time detainees

4   are booked until they are released.

5   33.   Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and

6   VERNON WARNKE are responsible for overseeing that Defendant CALIFORNIA FORENSIC

7   MEDICAL GROUP dba WELLPATH's staff complies with their contractual responsibilities to provide

8   inmate medical care.

9   34.   Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH were

10   directly responsible for staffing, training, supervision, and certain policies and customs at Defendants

11   COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE's jail

12   facilities. Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH provided

13   licensed, qualified physicians and nurses on a contract basis at Defendants COUNTY OF MERCED,

14   MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE's jail facilities, and employed or

15   was responsible for medical and mental health staff at the jail, including Defendants SAETERN KAO,

16   TERESA OLVERA, DYLAN FULCHER, and/or DOE 1 to 20.

17   **H.I.G. Capital / California Forensic Medical Group / Wellpath**

18   35.   Defendant CALIFORNIA FORENSIC MEDICAL GROUP is also-known-as

19   CORRECTIONAL MEDICAL GROUP COMPANIES INC. since 2013. Defendant H.I.G. CAPITAL,

20   LLC acquired Defendant CALIFORNIA FORENSIC MEDICAL GROUP, rebranding its name under the

21   umbrella of Correctional Medical Group Companies in 2013.

22   36.   Defendant CALIFORNIA FORENSIC MEDICAL GROUP is also-known-as

23   WELLPATH since October 1, 2018. October 1, 2018, Defendant H.I.G. CAPITAL, LLC announced

24   acquisition and joining of forces of Correctional Medical Group Companies with Correct Care Solutions,

25   creating a partnership with management, and rebranding as WELLPATH.

26   37.   Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH was and is

27   owned and controlled by H.I.G. CAPITAL, LLC.

28   38.   Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH acts on

6

behalf of H.I.G. CAPITAL, LLC and was and is responsible for the hiring, retaining, training, and supervising of the conduct, policies and practices of its employees and agents.

39.     H.I.G. CAPITAL, LLC acquired Defendant CALIFORNIA FORENSIC MEDICAL GROUP in 2013 and rebranded its name to Correctional Medical Group Companies. H.I.G. CAPITAL, LLC is the owner, manager, and partner of Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH.

40.     Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's executives, directors, supervisors and managers, physicians, nurses, licensed vocational nurses, health providers act on behalf of H.I.G. CAPITAL, LLC.

41.     H.I.G. CAPITAL, LLC is the alter ego of Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and/or vice versa.

42.     H.I.G. CAPITAL, LLC places its in-house professional and expertise as board members of CFMG to ensure their control over Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, resulting in a unity of interest and ownership lack of separate personalities between H.I.G. CAPITAL, LLC and Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH and their employees and agents.

43.     H.I.G. CAPITAL, LLC places at least two managing directors and one principal of its private equity team as board members, chief financial officers, or other executive officers for Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, ensuring continuity of financial and practical control and management.

44.     H.I.G. CAPITAL, LLC uses Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH as a shell, instrumentality, or conduit for financially profiting from providing mental/medical care to inmates/prisoners.

**Custodial History**

45.     On November 3, 2022, TOMI KARTCHNER was booked into the custody of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE at the John Latorraca Correctional Center, 2584 Sandy Mush Road, Merced, CA 95341.

46.     TOMI KARTCHNER informed Defendants COUNTY OF MERCED, MERCED

COUNTY SHERIFF'S OFFICE, and Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's jail staff members, and jail records document, that she had received treatment at a hospital within the last three days; that she had attempted suicide in the past; that she had mental health diagnoses, including anxiety for which she was currently prescribed Zoloft, Zyprexa, and Xanax; that she had a history of suicide attempts; that she had been hospitalized one day before for suicidal ideation.

47.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's jail records document that, "Per custody [staff,] IP [inmate/patient] has been acting bizarre since her arrest," appeared "Disheveled," was "Anxious," had "Flat" affect, and had "Poor" insight and judgment.

**In-Custody Death**

48.    On May 19, 2023, TOMI KARTCHNER was arrested for a stalking charge.

49.    Prior to incarceration, TOMI KARTCHNER was medically evaluated and cleared at a hospital. TOMI KARTCHNER reported that she was suicidal, during the appointment.

50.    TOMI KARTCHNER was booked as a pre-trial detainee into the custody of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE at the John Latorraca Correctional Center, 2584 Sandy Mush Road, Merced, CA 95341.

51.    TOMI KARTCHNER was experiencing a mental health emergency when she was booked into the jail, including suicidal ideation.

52.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20 were informed and aware of TOMI KARTCHNER's impairments, including mental health emergency and suicidal ideation, based on documented mental health records and notice provided by prior incarceration history, jail records, and reports from TOMI KARTCHNER's family members.

53.    TOMI KARTCHNER informed Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's jail staff members that she had received treatment at a hospital within the last three days, including at Long Beach Memorial Hospital; that she had attempted suicide in the past, including less than one year prior; and that she had mental health diagnoses.

54. At approximately 7:57 p.m., TOMI KARTCHNER was placed on "Suicide Watch," including placement in a safety cell with "staggered" cell checks every "15 minutes."

55. On May 20, 2023, TOMI KARTCHNER's records documented that "This is apprx 3rd S/C [safety cell] placement," and she was "Feeling emotionally unstable."

56. At approximately 11:26 a.m., TOMI KARTCHNER was "cleared from safety cell" by Defendant SAETERN KAO, a certified social worker.

57. From May 21, 2023, to May 25, 2023, Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's jail staff members began offering TOMI KARTCHNER medications, including Fluoxetine (Prozac) 20mg. TOMI KARTCHNER refused medications on every occasion, every day it was offered.

58. On May 21, 2023, TOMI KARTCHNER refused contact with mental health staff.

59. By May 22, 2023, Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's jail staff members, including Defendants DOE 1 to 20, removed TOMI KARTCHNER from suicide watch.

60. TOMI KARTCHNER continued to experience a mental health emergency when she was removed from suicide watch, including suicide ideation.

61. On May 22, 2023, TOMI KARTCHNER refused to engage with Defendant TERESA OLVERA, a licensed marriage and family therapist. Defendant TERESA OLVERA documented that she was "unable to assess" TOMI KARTCHNER's mental health.

62. On May 24, 2023, TOMI KARTCHNER provided "limited engagement" and stated that "she does not want to talk" with Defendant DYLAN FULCHER, a register nurse.

63. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20 failed adequately to classify, assign, house, monitor, and respond to TOMI KARTCHNER's mental health emergency at the jail.

64. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE,

9

CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20 could have classified, assigned, and housed TOMI KARTCHNER in a manner responsive to her mental health emergency. For example, Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and DOE 1 to 20 could have closely and frequently monitored TOMI KARTCHNER's mental health emergency, including through increased cell-checks and evaluations; dressed TOMI KARTCHNER in a manner without suicide risks, including an anti-suicide smock, gown, or garment; placed TOMI KARTCHNER in a cell without suicide risks, such as anchor points and items which could be used to attempt suicide; and/or responded sooner to TOMI KARTCHNER's attempted suicide.

65.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH failed adequately to staff jail facilities with adequate personnel and to monitor inmates at jail facilities, including TOMI KARTCHNER, in violation of California Code of Regulations tit. 15 § 1027 *et seq*.

66.     On May 25, 2023, at approximately 3:03 p.m., TOMI KARTCHNER was "[i]rritable," provided "limited interaction," and did not "hold conversation, and expresse[d] irritation towards MH [mental health staff]," including with Defendant DYLAN FULCHER.

67.     At approximately 11:30 p.m., Defendants DOE 1 to 20, jail staff members, found TOMI KARTCHNER unresponsive and hanging inside of her cell.

68.     TOMI KARTCHNER was pronounced dead at the scene.

69.     TOMI KARTCHNER's cause of death was identified as "asphyxia by hanging."

**Failure to Produce Medical Records**

70.     On August 25, 2023, Plaintiffs ESTATE OF TOMI KARTCHNER and S.B., through their legal representative, presented a written authorization to Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH requesting prompt production of TOMI KARTCHNER's records, pursuant to California Evidence Code § 1158.

71.     On August 28, 2023, Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's representative stated: "I will get the medical records sent to you."

10

COMPLAINT; DEMAND FOR JURY TRIAL
*Estate of Kartchner v. County of Merced*, United States District Court, Eastern District of California, Case No. _____

72.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH failed to produce records.

73.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH failed to comply with California Evidence Code § 1158(d)'s requirement that TOMI KARTCHNER's records be produced "within five days after the presentation of the written authorization…"

74.     On information and belief, Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's failure to produce TOMI KARTCHNER's records as required by law is an effort to delay, obscure, and suppress the discovery of misconduct and malfeasance related to her death.

## POLICY AND CUSTOM ALLEGATIONS

75.     Defendant VERNON WARNKE, in his capacity as Sheriff, is and was a final policymaking authority for Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE, including as it relates to the maintenance and operation of jail and detention facilities; training, supervision, and discipline of staff acting under his command; and the safekeeping of inmates/prisoners in his custody. *See* Cal. Const. Art. XI § 1(b); Cal. Pen. Code § 4000; Cal. Pen. Code § 4006; Cal. Gov. Code § 26605; Cal. Gov. Code § 26610. Defendant VERNON WARNKE has been employed by Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE since 1979, including in supervisory and policymaking capacities since at least 1997. Defendant VERNON WARNKE has served as Sheriff since December 2014.

76.     Defendant VERNON WARNKE, as sheriff, was a final policymaking authority for Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE, including as it relates to the maintenance and operation of jail and detention facilities, such as the John Latorraca Correctional Center; the hiring, screening, training, supervision, counseling, discipline, and control of law enforcement officers acting under his command; the safekeeping of inmates/prisoners in his custody; the prompt transfer of mentally or medically ill inmates to appropriate out-of-facility placements; and the promulgation of the policies and procedures and allowance of the practices and customs. *See* Cal. Const. Art. XI § 1(b); Cal. Pen. Code § 4000; Cal. Pen. Code § 4006; Cal. Gov. Code § 26605; Cal. Gov. Code

1    § 26610.

2    77.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE,

3    VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH were

4    charged by law with the administration of jail facilities within the County of Merced, including the John

5    Latorraca Correctional Center, and the delivery of medical and mental health services during TOMI

6    KARTCHNER's incarceration.

7    78.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and

8    VERNON WARNKE failed adequately to monitor the administration of the requirements and the

9    obligations imposed by Defendant COUNTY OF MERCED's contract with Defendant CALIFORNIA

10   FORENSIC MEDICAL GROUP dba WELLPATH, including staffing and delivery of medical and

11   mental health services at jail facilities.

12   79.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE,

13   VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH had a

14   duty to provide TOMI KARTCHNER with adequate medical and mental health services but failed to do

15   so.

16   80.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE,

17   VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's policies

18   and customs fail to comply with the standards set forth by the National Commission on Correctional

19   Health Care ("NCCHC"), including standards related to housing, mental health care, and treatment.

20   81.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE,

21   VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH

22   maintained a policy or custom of inadequate supervision and reporting; medical care and treatment;

23   and/or mental health care and treatment, resulting in the violation of constitutional rights of persons held

24   in their jail facilities, including TOMI KARTCHNER. Specifically, the inadequate polices, customs,

25   training, supervision, and discipline of custody staff, medical staff, and mental health staff at the John

26   Latorraca Correctional Center results in the following deficiencies:

27   (a)    Failure to provide appropriate medical and mental health care, including

28   identification and treatment for suicide risk;

12

(b)     Failing to train, supervise and/or promulgate appropriate policies and procedures in order to identify and provide appropriate mental health care for inmates, including identification and treatment for suicide risk;

(c)     Failure to have proper protocols, policies, and procedures in place to minimize and mitigate inmates' ability to inflict self-harm;

(d)     Failure appropriately to assess inmates' suicidality, risk of self-harm, and mental illness;

(e)     Failure to provide access to medical and mental health care and treatment, continuity of care, and access to a higher level of care not available at jail facilities, if necessary;

(f)     Failure to classify, house, and monitor inmates suffering from mental health disabilities in compliance with mandates and standards;

(g)     Failure to maintain sufficient, competent, required, and contracted medical and mental health staffing and services;

(h)     Failure to maintain sufficient, competent, required, and contracted staffing, including in compliance with California Code of Regulations tit. 15 § 1027;

(i)     Failure to utilize appropriate nationally- and locally-accepted minimum standards, procedures, and practices for handling mentally-ill and/or emotionally-disturbed persons;

(j)     Failure to institute, require, and enforce proper and adequate training, supervision, policies, procedures and practices concerning the handling of suicidal inmates;

(k)     Failure to comply with, enforce, and implement self-imposed policies and procedures;

(l)     Failure to maintain competent and adequate supervision and training of medical, mental health, and custodial staff;

(m)     Failure to place inmates' safety and needs, including duties and responsibilities to provide sufficient and competent medical care staff to inmates, above financial interests and profits;

(n)     Failure to conduct appropriate and complete safety checks for inmates, including in compliance with California Code of Regulations tit. 15 § 1027.5;

(o)     Failure to provide inmates with access to necessary and appropriate medical and

13

mental health care;

(p)     Failure to create and timely implement appropriate medical and mental health treatment plans;

(q)     Failure to conduct appropriate and complete suicide/risk assessments;

(r)     Failure to utilize appropriate isolation/safety cells, segregation/separation housing, and specialized monitoring;

(s)     Failure to evaluate and transfer inmates to a hospital or facility providing appropriate and necessary medical and mental health care, when an inmate is gravely disabled, at risk of serious harm, and/or suicidal;

(t)     Failure to mitigate, reduce, or terminate harmful cumulative effects of inappropriate housing of mentally-ill inmates, including denial of opportunities for services, exercise, and social activity; and/or

(u)     Failure to acknowledge inmate grievances and misconduct, including failure to conduct timely or adequate investigations of inmate grievances, pro forma denials of inmate grievances, and failure to respond to, or to take adequate actions to respond to or rectify problems identified in, inmate grievances.

82.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH maintained a policy or custom of inadequate supervision and monitoring of inmates, resulting in violation of constitutional rights of persons held in their jail facilities, including TOMI KARTCHNER. For example:

(a)     On November 28, 2023, Defendant VERNON WARNKE informed Defendant COUNTY OF MERCED's Board of Supervisors that Defendant MERCED COUNTY SHERIFF'S OFFICE's jail facilities are habitually understaffed, stating: "We're down 30 positions in corrections, with more putting in for other agencies. . . . Correctional officers: 30 CO vacancies down. We're 28% in staffing, out of 108 positions. . . . With our jail construction, we have closed two dormitories due to lack of staff, which is assisting in the re-model. It's just nature of the beast, we have to do it. Due to lack of staffing, correctional officers are working three 16-hour shifts a week. It's mandatory, they don't have a

14

1   choice. No other agency in this county has to do that, or will do that. . . . The state of the Sheriff's Office

2   is dire." *See* <https://www.facebook.com/MercedSheriffOffice/videos/884305920066178/?extid=CL-

3   UNK-UNK-UNK-IOS_GK0T-GK1C&mibextid=cr9u03>; *see also*

4   <https://www.countyofmerced.com/3919/Board-Archive-2023>.

5          (b)     On August 30, 2023, Defendant VERNON WARNKE and undersheriff Corey

6   Gibson acknowledged that Defendant COUNTY OF MERCED's actions and inactions ensure that

7   Defendant MERCED COUNTY SHERIFF'S OFFICE's jail facilities are habitually understaffed, stating:

8   "As you know, sheriff, we've had some struggles currently with our staffing, both in corrections and

9   operations. Currently, we have 108 allotted positions through the county for custodial staff. And out of

10  those 108, we currently have 33 vacancies. Even to make it worse, out of those, for people currently

11  employed, we have 10 that are still in training and aren't able to work line as a solo officer. So, we're

12  still working through those struggles. . . . I'm very proud of the personnel that we do have, busting their

13  butts. Especially our correctional staff is doing 16-hour days, three and four days a week." *See*

14  <https://youtu.be/1DAqNHFOKoE?si=KMwLWr6MqMxseq1k>.

15         (c)     On April 20, 2023, 31-year-old Derek Valentine died by overdose at the John

16  Latorraca Correctional Center. Jail staff were aware that the facility was overrun by drugs, including

17  fentanyl. Derek Valentine obtained and ingested fentanyl, due to jail staff's inadequate supervision.

18  Derek Valentine died as a result of the jail staff's failure to prevent inmates' access to dangerous drugs,

19  failure timely to detect Derek Valentine's medical needs when he ingested dangerous drugs, and failure

20  adequately to render necessary medical care when Derek Valentine's immediate medical need was

21  discovered.

22         (d)     On October 19, 2022, 21-year-old Jacob Apodaca was housed in the Merced

23  County Main Jail with at least six other inmates, including Encarncion Salinas and Mario Smith Jr. Jacob

24  Apodaca was attacked and murdered by Encarncion Salinas and Mario Smith Jr. inside of the cell, over

25  the course of approximately 10 minutes, where Jacob Apodaca sustained more than 150 stab wounds and

26  was repeatedly stomped. The entire attack was video-recorded on Defendant MERCED COUNTY

27  SHERIFF'S OFFICE's surveillance system but none of its jail staff was monitoring the video feed or

28  detected the attack while it was in progress. Defendant MERCED COUNTY SHERIFF'S OFFICE's jail

staff, including sergeant Soto and deputy John Wibright, abandoned their posts and responsibilities to monitor and supervise inmates, including during Encarncion Salinas and Mario Smith Jr.'s attack on Jacob Apodaca, to attend a jail-sanctioned briefing for jail personnel. Proceedings in Jacob Apodaca's murder trial revealed that Defendant MERCED COUNTY SHERIFF'S OFFICE's jail staff routinely abandoned their posts and supervision of inmates for up to two hours-per-day, including in violation of California Code of Regulations tit. 15 § 1027.5. 46 minutes after the attack ended, Jacob Apodaca's body was discovered in the corner of the cell during a routine cell-check by jail staff. Defendant MERCED COUNTY SHERIFF'S OFFICE conducted an in-custody death investigation/review following Jacob's death. (IA 2022-016.) On February 7, 2023, Defendant MERCED COUNTY SHERIFF'S OFFICE captain Jeff Coburn concluded the investigation: "In review of the documentation and video evidence, I was unable to identify any policy or procedure violations by Correctional staff." Defendant VERNON WARNKE ratified the findings and conclusion of the investigation. A civil rights lawsuit was filed by Jacob Apodaca's family against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE. *Estate of Apodaca v. County of Merced*, United States District Court, Eastern District of California, Case No. 1:23-cv-00171-JLT-SAB. The case was settled pre-trial for $2,950,000.

(e)     On January 9, 2021, six inmates escaped from the Merced County Main Jail but Defendant MERCED COUNTY SHERIFF'S OFFICE's jail staff failed to discover that the inmates had escaped until the following day, more than eight hours after the inmates escaped. Defendant MERCED COUNTY SHERIFF'S OFFICE's internal investigation found a "multitude of different correctional staff members" contributed to the inmates' escape, where "head counts, security checks, and daily tasks by Correctional Officers were not being completed." Instead, "while the escape was occurring correctional staff were present in the control room playing a game" and "correctional staff were frequently in the control room playing cards, playing 'corn hole', betting on the games, exchanging money, removing their uniforms, and watching movies on the computer," rather than carrying out their duties, including monitoring inmates. (IA 2021-001.) Defendants MERCED COUNTY SHERIFF'S OFFICE and VERNON WARNKE failed adequately to discipline or terminate any of the involved jail staff, as a result of the investigation.

(f)     On March 23, 2019, 39-year-old Rene Snider was housed in the Merced County Main Jail and was permitted to hang herself in her jail cell using a bed sheet tied around a bunk. Defendant MERCED COUNTY SHERIFF'S OFFICE correctional officer Adriana Castaneda failed to conduct a cell-check on jail inmates, including Rene Snider, for one hour, 22 minutes, and 33 seconds. Adriana Castaneda became "districted" and engaged in a non-substantive conversation with a fellow correctional officer for 46 minutes, during which time Rene Snider died. Defendant MERCED COUNTY SHERIFF'S OFFICE's internal investigation "sustained" violations of policy against Adriana Castaneda for failure timely to conduct cell-checks but the only "discipline" imposed was a "written reprimand" issued on September 23, 2019. (IA 2019-004.) A civil rights lawsuit was filed by Rene Snider's family against Defendants COUNTY OF MERCED and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH. *D.M. v. County of Merced*, United States District Court, Eastern District of California, Case No. 1:20-cv-00409-JLT-SAB. The case remains pending.

(g)     On August 14, 2018, Defendant VERNON WARNKE informed Defendant COUNTY OF MERCED's Board of Supervisors that, despite inadequate staffing at Defendant MERCED COUNTY SHERIFF'S OFFICE's jail facilities: "We will make room at the inn for whoever needs it." <https://livestream.com/accounts/21193189/events/8017913/videos/178927918>; *see also* Jason Pohl & Ryan Gabrielson, *Deadly Delays in Jail Construction Cost Lives and Dollars Across California* (July 17, 2019), available at: <https://www.propublica.org/article/deadly-delays-in-jail-construction-cost-lives-and-dollars-across-california>.

(h)     On June 17, 2018, 20-year-old Fabian Cardoza was housed in the Merced County Main Jail when he was killed in the shower. Fabian Cardoza was cornered and attacked by two inmates, including Santiago Martinez. The attackers choked Fabian Cardoza to death, then carried his lifeless body back to his cell. 24 hours passed without the attack being detected. The following day, a jail guard went to Fabian Cardoza's cell for his court hearing and found his body. The entire attack was video-recorded on Defendant MERCED COUNTY SHERIFF'S OFFICE's surveillance system but none of its jail staff was monitoring the video feed or detected the attack while it was in progress or after it occurred. "More than a year later, the sheriff's office still has not acknowledged that the jail staff overlooked a corpse in a cell bed for more than a day. Merced County Sheriff Verne Warnke declined to answer

reporters' questions for this story, but he has blamed low staffing levels for jail violence." Jason Pohl &
Ryan Gabrielson, *Deadly Delays in Jail Construction Cost Lives and Dollars Across California* (July 17,
2019), available at: <https://www.propublica.org/article/deadly-delays-in-jail-construction-cost-lives-
and-dollars-across-california>; *see also* <https://www.documentcloud.org/documents/5976132-Cardoza-
18-29240.html#document/p14/a499625>.

   (i) On June 11, 2017, 31-year-old Aaron Bonilla was housed in the Merced County
Main Jail with at least three other inmates, including Steven Rincon, Reyes Carrillo, and Alfonso
Martinez. Aaron Bonilla was attacked and murdered by Steven Rincon, Reyes Carrillo, and Alfonso
Martinez inside of the cell, over the course of approximately 12 minutes, where Aaron Bonilla was
beaten to death. The attack was not detected by Defendant MERCED COUNTY SHERIFF'S OFFICE's
jail staff and was discovered only when other inmates alerted jail staff. Jason Pohl & Ryan Gabrielson,
*Deadly Delays in Jail Construction Cost Lives and Dollars Across California* (July 17, 2019), available
at: <https://www.propublica.org/article/deadly-delays-in-jail-construction-cost-lives-and-dollars-across-
california>. Defendant VERNON WARNKE admitted that the jail was understaffed, stating:
"Realistically we're 10 or 12 down in our corrections." ABC30, *Sheriff calling for better funding after
Inmate dies after assault at Merced County Jail* (June 27, 2017), available at: <https://abc30.com/los-
banos-inmate-merced-county-jail-dead/2156587/>. Prior to the attack, Defendant VERNON WARNKE
also stated: "Our staffing levels are low, and don't think for a minute those inmates don't know it." Rob
Parsons, *Central Valley Family of inmate beaten to death in Merced jail files $2 million lawsuit* (Mar. 14,
2018), available at: <http://www.mercedsunstar.com/news/local/central-valley/article205184219.html>.
A civil rights lawsuit was filed by Aaron Bonilla's family against Defendants COUNTY OF MERCED
and VERNON WARNKE. *Estate of Bonilla v. County of Merced*, United States District Court, Eastern
District of California, Case No. 1:18-cv-00329-DAD-SKO. The case was settled pre-trial.

   (j) On September 19, 2015, 29-year-old Alejandro Vega was housed in the Merced
County Main Jail when he was beaten to brain-death. Defendant MERCED COUNTY SHERIFF'S
OFFICE's jail staff failed to detect the attack while it was in progress. Jason Pohl & Ryan Gabrielson,
*Deadly Delays in Jail Construction Cost Lives and Dollars Across California* (July 17, 2019), available
at: <https://www.propublica.org/article/deadly-delays-in-jail-construction-cost-lives-and-dollars-across-

california>; *see also* <https://www.documentcloud.org/documents/6188401-Vega-autopsy-Merced.html>.

83.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and VERNON WARNKE employ Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, a private for-profit company, to deliver constitutionally-mandated medical services to inmates, with knowledge that the services provided are inadequate and non-compliant with the contractually bargained-for services. For example:

(a)    "Wellpath provides health care in 34 of California's 56 county jail systems…" "In multiple instances, the for-profit company has secured multimillion-dollar county contracts without facing a single competitive bid…" "Wellpath hasn't lost a single contract to provide health care in a California county jail since its 2018 founding, even when serious allegations have surfaced." Wellpath is subject to "more than 1,000 lawsuits in U.S. federal courts, filed by prisoners, their families and civil rights groups, naming the company as a defendant, and three recent investigations involving Wellpath's quality of care by the U.S. Department of Justice." There exist "four FBI investigations — three into the company's health care delivery and one into bribery allegations involving Gerard 'Jerry' Boyle, the founder of one of the two companies that merged to become Wellpath and who pleaded guilty to conspiracy to commit mail fraud." "In San Luis Obispo County, the Justice Department concluded that Wellpath did not provide a 'significant' improvement over a jail's former government-run system after the company's takeover in February 2019 — a system whose deficient care had prompted the investigation." "In a 2020 probe into the Massachusetts Department of Corrections, the DOJ found Wellpath's mental health care was so abysmal that it may have violated the U.S. Constitution's protections against 'cruel and unusual punishment,' with 'vague' policies that increased the risk of self-harm and suicide among mentally ill prisoners" and "[a] follow-up report [in 2023] revealed that Wellpath had low staffing levels and high rates of unlicensed mental health providers." "[Another] investigation focused on Correct Care Solutions, which became Wellpath in 2018 after merging with California Forensic Medical Group," where "[i]nvestigators found that the company failed to develop a quality-control plan and overbilled the state for its medical services in a Florida prison. The Federal Bureau of Prisons, which had awarded the contract to CCS, agreed with the DOJ's recommendations on

19

how it could better monitor the company's performance." "A 2020 Reuters investigation of large jails found that patients at institutions using Wellpath and other private providers died at higher rates than at jails with public health care. The investigation found that from 2016 to 2018, for every 10,000 inmates in Wellpath's care, 16 died; in publicly run jails, that rate was 13 per 10,000." "[Wellpath] routinely fails to adequately staff California county jails with qualified nurses and doctors, meaning that sick patients often must wait weeks — or, in emergency situations, crucial minutes or hours — to be treated." "In Yuba County, attorneys appointed by the local Superior Court to monitor the jail's compliance with a decades-old settlement agreement alleging poor conditions found that Wellpath consistently failed to staff enough nurses and therapists to abide by the settlement's terms in both 2020 and 2021." "At the Sonoma County Jail, the National Union of Healthcare Workers, a group that represents many Wellpath nurses in California, sent a report to the Sonoma County Board of Supervisors finding that from December 2021 through March 2022, the jail staffed less than two-thirds of the nurse-hours that were required by their contract. The staffing levels in the jail were so low last March, the union's report found, that for every 500 prisoners in the Sonoma system, just one registered nurse was on duty at any given time." "Three of the five [former Wellpath employees questioned] said they were often responsible for a number of patients that felt unsafe or impossible to manage," including one former nurse stating: "I don't feel safe with 600 patients. That's not an OK ratio. Nowhere in the world is that an OK ratio." Susie Neilson, *Its patients are 'literally a captive market.' Is this California health care giant failing them?* (July 25, 2023), available at: <https://www.sfchronicle.com/california/article/wellpath-health-care-jails-17917489.php>.

(b)      Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH "has been sued nearly 500 times over the last five years across the country, according to an online review of lawsuits." Brooks Jarosz , Lisa Fernandez & Simone Aponte, *Santa Rita Jail's medical provider is target of lawsuits, complaints about lack of care* (May 5, 2021), available at: <https://www.ktvu.com/news/santa-rita-jails-medical-provider-is-target-of-lawsuits-complaints-about-lack-of-care>.

(c)      In August 2021, the Civil Rights Division and the United States Attorney's Office for the Central District of California completed an investigation into the conditions of confinement at the

20

San Luis Obispo County Jail, where medical and mental health services were operated by Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH since February 2019. Therein, the investigative report concluded, *inter alia*: "Wellpath and its staff appear not to take seriously prisoner grievances or the grievance process as a mechanism for prisoners to raise legitimate medical concerns"; "Wellpath fails to provide adequate staffing to prevent delays in medical care that place prisoners at substantial risk of serious harm"; "[t]he Jail provided no evidence that Wellpath has corrected these deficiencies" related to failure to "conduct critical incident reviews, and when prisoners died, death reviews … includ[ing] a meaningful analysis into causal factors or systemic issues"; "Wellpath does not routinely analyze the quality of care that it provides"; and "Wellpath in fact seems to discourage routine follow-up mental health care." <https://www.justice.gov/opa/press-release/file/1429076/download?utm_medium=email&utm_source=govdelivery>.

(d)     On June 24, 2017, 29-year-old Luis Patino was housed at the Merced County Main Jail, where he remained until his death on September 27, 2017. Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH was responsible for Luis Patino's medical care. Luis Patino developed valley fever (coccidioidomycosis), a fungal infection caused by coccidioides which was easily diagnosed and treated. In the weeks before his death, Luis Patino complained that he was having chest pain and difficulty breathing. Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's medical staff failed to diagnose or treat Luis Patino's illness but, instead, prescribed inappropriate and inadequate pain and cold medications. On September 27, 2017, Luis Patino died of disseminated coccidioidomycosis, the most serious form of valley fever. A civil rights lawsuit was filed by Luis Patino's family against Defendants COUNTY OF MERCED and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH. *Patino v. County of Merced*, United States District Court, Eastern District of California, Case No. 1:18-cv-01468-AWI-SAB. The case was settled pre-trial for $150,000.

(e)     "HIG Capital's California Forensic Medical Group (CFMG), now part of Wellpath, and its clients have agreed to pay out millions of dollars in settlements to families of incarcerated people who have alleged negligence in the care the company provided." Jim Baker, *HIG Capital's and Wellpath's Correctional Healthcare Investment Risks* (July 2019), available at: <https://pestakeholder.org/wp-content/uploads/2019/07/HIG-Capitals-Correctional-Healthcare-

21

Investment-Risks-PESP-070819.pdf>.

        (f)      "Analysis of California department of justice data by Fairwarning found that about 200 inmates died under the care of California Forensic Medical Group (CFMG), the Californian arm of the [Correctional Medical Group Companies], between 2004 and 2014. Excluding homicide, it works out at a death rate of 1.7 per 1,000 inmates at CFMG jails compared with 1.5 in other jails." Todd Murphy, a director of business development for Correctional Medical Group Companies, stated that "the main reason counties are choosing to outsource their jail healthcare is not to reduce daily costs, but for the comfort of knowing that a lawsuit brought by the family of a dead inmate would be brought against the company and not the county. 'We provide a full partnership to our county partners,' he said. 'But the biggest thing we do is indemnify the county against risk and reliability, do everything we can to keep them out of trouble.'" Rupert Neate, *Welcome to Jail Inc: how private companies make money off US prisons* (June 16, 2026), available at: <https://www.theguardian.com/us-news/2016/jun/16/us-prisons-jail-private-healthcare-companies-profit>.

        (g)      In 2015, Defendant CALIFORNIA FORENSIC MEDICAL GROUP entered into a class action settlement which required it to address issues of inadequate medical and mental healthcare, inadequate staffing, and accommodations for disabled prisoners and serious safety problems at the Monterey County Jail. *Hernandez v. County of Monterey*, U.S. District Court, Northern District of California, Case No. 5:13-cv-02354-BLF, ECF No. 485 (N.D. Cal. May 15, 2015). Defendant CALIFORNIA FORENSIC MEDICAL GROUP failed completely to comply with the terms of the settlement, and the court issued an order compelling its compliance. *Id*. ECF No. 617 (N.D. Cal. Nov. 1, 2017).

        (h)      In 2013–2014, the Santa Cruz County Grand Jury addressed multiple deaths in the county jail where Defendant CALIFORNIA FORENSIC MEDICAL GROUP provided services. The investigation reviewed five in-custody deaths between August 2012 and July 2013, including two suicides by hanging and four deaths which occurred after Defendant CALIFORNIA FORENSIC MEDICAL GROUP assumed responsibility for the medical services at the jail. Each of the individuals who died in-custody had medical problems, mental health problems, or both. In each in-custody death case, the report identified failures at critical points in the process, sometimes finding that individuals

1    were incorrectly classified, not properly monitored, or inadequately treated. <https://www.co.santa-

2    cruz.ca.us/Portals/0/County/GrandJury/GJ2014_final/2013-

3    2014_SantaCruzCountyGrandJuryFinalReport_complete.pdf>.

4           84.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and

5    VERNON WARNKE employ Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba

6    WELLPATH, a private for-profit company, to deliver constitutionally-mandated mental health services

7    to inmates, with knowledge that the services provided are inadequate and non-compliant with the

8    contractually bargained-for services. For example:

9           (a)    Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH is

10   subject to, and fails to comply with, a consent decree based on services in the County of Alameda's jail

11   facilities. *Babu v. Ahern*, United States District Court, Northern District of California, Case No. 5:18-cv-

12   07677-NC, ECF No. 436 (N.D. Cal. Feb. 7, 2022). *See* <https://rbgg.com/santa-rita-consent-decree/>;

13   <http://grandjury.acgov.org/grandjury-assets/docs/2021-

14   2022/Grand.Jury.Report.2022.for.ITD.Web.pdf>; Lakshmi Sarah & Matthew Green, *Grand Jury: Major*

15   *Health and Safety Violations at Santa Rita Jail Require 'Urgent Attention'* (June 30, 2022), available at:

16   <https://www.kqed.org/news/11918230/grand-jury-major-health-and-safety-violations-at-santa-rita-jail-

17   require-urgent-attention>. Specifically, Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba

18   WELLPATH's care at the jail facilities has resulted in more than 45 deaths, and 19 suicides. *See*, *e.g.*,

19   Robert Jablon, *Feds Say Santa Rita Jail Violates Rights of Mentally Ill* (April 24, 2021), available at:

20   <https://www.nbcbayarea.com/news/local/east-bay/feds-say-santa-rita-jail-violates-rights-of-mentally-

21   ill/2527370/>; Lisa Fernandez, *DOJ finds mental health care, overuse of isolation at Santa Rita Jail*

22   *unconstitutional* (April 22, 2021), available at: <https://www.ktvu.com/news/doj-finds-mental-health-

23   care-overuse-of-isolation-at-santa-rita-jail-unconstitutional>. Lisa Fernandez, *A look at the 45 inmates*

24   *who have died at Santa Rita Jail in the last five years* (Oct. 4, 2019, *updated* Jan. 17, 2020), available at:

25   <https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-

26   years>.

27          (b)    Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's

28   care at the jail facilities operated by the County of Solano has resulted in at least four suicides in less than

10 years. <u>Vallejo Sun</u>, Scott Morris, *2022 was deadliest year in Solano County jails in 24 years* (Dec. 19, 2022), available at: <https://www.vallejosun.com/2022-was-deadliest-year-in-solano-county-jails-in-24-years/>. Specifically, the in-custody deaths include: Douglas Tuttle (died December 2, 2014); Jeremiah Conaway (died April 10, 2019; *LeMoon v. Cal. Forensic Med. Grp.*, United States District Court, Northern District of California, Case No. 4:20-cv-02552-PJH); Salvador Romero (died September 4, 2022; United States District Court, Eastern District of California, Case No. 2:23-cv-00523-JAM-AC); and Kurt DeSilva (died January 23, 2023).

(c)      In August 2023, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH and the County of Alameda paid $2,000,000 to settle a federal civil rights lawsuit involving the suicide of a 37-year-old man at a county jail. *Estate of Brown v. County of Alameda*, United States District Court, Northern District of California, Case No. 3:22-cv-05457-VC.

(d)      In August 2018, Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH and the County of El Dorado paid $1,050,000 to settle a federal civil rights lawsuit involving the suicide of a 34-year-old man at a county jail. <u>Mountain Democrat</u>, *Spies family awarded more than $1 million for wrongful death* (Aug. 31, 2018), available at: <https://www.mtdemocrat.com/news/spies-family-awarded-more-than-1-million-for-wrongful-death/>.

(e)      In June 2018, Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH and the County of Lake paid $2,000,000 to settle a federal civil rights lawsuit involving the suicide of an 86-year-old woman at a county jail. The case revealed the "jail's medical services provider was in violation of state regulations" and Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH utilized "lesser trained vocational nurses to make key medical and mental health decisions for prisoners." Julie Johnson, *Lake County settles jail suicide case for $2 million* (June 18, 2018), available at: <https://www.pressdemocrat.com/article/news/lake-county-settles-jail-suicide-case-for-2-million/?sba=AAS>.

(f)      As of 2015, over a 10-year period, county jails contracting with Defendant CALIFORNIA FORENSIC MEDICAL had a rate of suicide 50 percent higher than in other county jails in California, and at least three county grand juries had criticized its role in inmate deaths. According to California Department of Justice records, 72 people committed suicide in the last decade while in a jail

24

served by Defendant CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, and the company's suicide prevention efforts have been challenged in the federal lawsuits in multiple municipalities, including the County Monterey, County of Lake, and County of Ventura. Brad Branan, *California for-profit company faces allegations of inadequate inmate care* (Jan. 17, 2015), available at: <https://amp.sacbee.com/article7249637.html>.

(g) In 2015, Defendant CALIFORNIA FORENSIC MEDICAL GROUP entered into a class action settlement which required it to address issues of inadequate medical and mental healthcare, inadequate staffing, and accommodations for disabled prisoners and serious safety problems at the Monterey County Jail. *Hernandez v. County of Monterey*, United States District Court, Northern District of California, Case No. 5:13-cv-02354-BLF, ECF No. 485 (N.D. Cal. May 15, 2015). Defendant CALIFORNIA FORENSIC MEDICAL GROUP failed completely to comply with the terms of the settlement, and the court issued an order compelling its compliance. *Id*. ECF No. 617 (N.D. Cal. Nov. 1, 2017).

(h) In 2013–2014, the Santa Cruz County Grand Jury addressed multiple deaths in the county jail where Defendant CALIFORNIA FORENSIC MEDICAL GROUP provided services. The investigation reviewed five in-custody deaths between August 2012 and July 2013, including two suicides by hanging and four deaths which occurred after Defendant CALIFORNIA FORENSIC MEDICAL GROUP assumed responsibility for the medical services at the jail. Each of the individuals who died in-custody had medical problems, mental health problems, or both. In each in-custody death case, the report identified failures at critical points in the process, sometimes finding that individuals were incorrectly classified, not properly monitored, or inadequately treated. <https://www.co.santa-cruz.ca.us/Portals/0/County/GrandJury/GJ2014_final/2013-2014_SantaCruzCountyGrandJuryFinalReport_complete.pdf>.

85. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH were or should have been on notice regarding the need to discontinue, modify, or implement new and different versions of deficient policies or customs because the inadequacies constituted life-threatening decision and were so obvious and likely to result in violations of the rights of inmates, including TOMI

25

KARTCHNER.

86.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's inadequate policies, customs, training, and supervision proximately caused violations of the rights of inmates, including TOMI KARTCHNER.

## FIRST CLAIM

### Deliberate Indifference / Special Relationship

### (U.S. Const. Amend. XIV; 42 U.S.C. § 1983)

87.     Plaintiff ESTATE OF TOMI KARTCHNER (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20.

88.     The allegations of the preceding paragraphs 1 to 86 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

89.     Defendants CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20 intentionally refused to provide TOMI KARTCHNER with necessary mental health care or treatment, or refused to transfer TOMI KARTCHNER to a facility that could provide such necessary medical care or treatment, putting TOMI KARTCHNER at substantial risk of suffering serious harm, and did not take reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, in violation of the Fourteenth Amendment to the U.S. Constitution.

90.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH maintained policies or customs of action and inaction and knew or should have known that officials under their command were inadequately trained, supervised, or disciplined resulting from either the lack of proper training, pursuant to policy, or the result of the lack of policy, in violation of the Fourteenth Amendment to the U.S. Constitution.

91.     Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba

26

1    WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20's actions

2    and inactions were motivated by evil motive or intent, involved reckless or callous indifference to

3    constitutional rights, or were wantonly or oppressively done.

4          92.    TOMI KARTCHNER was injured as a direct and proximate result of Defendants

5    COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE,

6    CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA

7    OLVERA, DYLAN FULCHER, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE

8    OF TOMI KARTCHNER to receive compensatory and nominal damages against Defendants COUNTY

9    OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA

10    FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN

11    FULCHER, and DOE 1 to 20; and punitive damages against Defendants VERNON WARNKE,

12    CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA

13    OLVERA, DYLAN FULCHER, and DOE 1 to 20.

14          WHEREFORE, Plaintiff ESTATE OF TOMI KARTCHNER prays for relief as hereunder

15    appears.

16    **SECOND CLAIM**

17    **Title II of the Americans with Disabilities Act**

18    **(42 U.S.C. § 12101, *et seq.*)**

19          93.    Plaintiff ESTATE OF TOMI KARTCHNER (pursuant to Cal. Code Civ. Proc. § 377.30)

20    asserts this Claim against Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S

21    OFFICE.

22          94.    The allegations of the preceding paragraphs 1 to 86 are realleged and incorporated, to the

23    extent relevant and as if fully set forth in this Claim.

24          95.    Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE

25    each qualify as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104.

26    TOMI KARTCHNER had a mental impairment that substantially limited one or more major life

27    activities and had a record of such an impairment.

28          96.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE,

27

VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20 failed reasonably to accommodate TOMI KARTCHNER's disability, where they could have provided a reasonable accommodation, including by: (a) providing TOMI KARTCHNER with necessary mental health care or treatment; (b) transferring TOMI KARTCHNER to a facility that could provide necessary mental health care or treatment; and/or (c) classifying, housing, and supervising TOMI KARTCHNER based on her impairment, where she would receive adequate and necessary mental health care or treatment and/or be prevented from self-harm, with deliberate indifference or reckless disregard, in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

97. TOMI KARTCHNER was injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF TOMI KARTCHNER to receive compensatory and nominal damages against Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE.

WHEREFORE, Plaintiff ESTATE OF TOMI KARTCHNER prays for relief as hereunder appears.

### **THIRD CLAIM**

### **Section 504 of the Rehabilitation Act**

### **(29 U.S.C. § 701, *et seq*.)**

98. Plaintiff ESTATE OF TOMI KARTCHNER (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH.

99. The allegations of the preceding paragraphs 1 to 86 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

100. Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE qualify as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA

28

FORENSIC MEDICAL GROUP dba WELLPATH receive federal financial assistance. TOMI KARTCHNER had a mental impairment that substantially limited one or more major life activities and had a record of such an impairment.

101.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20 failed reasonably to accommodate TOMI KARTCHNER's disability, where they could have provided a reasonable accommodation, including by: (a) providing TOMI KARTCHNER with necessary mental health care or treatment; (b) transferring TOMI KARTCHNER to a facility that could provide necessary mental health care or treatment; and/or (c) classifying, housing, and supervising TOMI KARTCHNER based on her impairment, where she would receive adequate and necessary mental health care or treatment and/or be prevented from self-harm, with deliberate indifference or reckless disregard, in violation of the Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.

102.    TOMI KARTCHNER was injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF TOMI KARTCHNER to receive compensatory and nominal damages against Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE.

WHEREFORE, Plaintiff ESTATE OF TOMI KARTCHNER prays for relief as hereunder appears.

## FOURTH CLAIM

### Unwarranted Interference with Familial Association

### (U.S. Const. Amend. XIV; 42 U.S.C. § 1983)

103.    Plaintiffs S.B., KERRY CALVERT, and AARON KARTCHNER assert this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20.

29

104.     The allegations of the preceding paragraphs 1 to 86 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

105.     Plaintiffs S.B., KERRY CALVERT, and AARON KARTCHNER shared a close relationship and special bond with TOMI KARTCHNER, their biological family member, which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a close familial relationship.

106.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20 caused termination of and interference with Plaintiffs S.B., KERRY CALVERT, and AARON KARTCHNER's familial relationship with TOMI KARTCHNER, including by exhibiting deliberate indifference to TOMI KARTCHNER's need for mental health care or treatment, in violation of the Fourteenth Amendment to the U.S. Constitution.

107.     Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

108.     Plaintiffs S.B., KERRY CALVERT, and AARON KARTCHNER were injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20's actions and inactions, entitling them to receive compensatory and nominal damages against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER,  and DOE 1 to 20; and punitive damages against Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20.

WHEREFORE, Plaintiffs S.B., KERRY CALVERT, and AARON KARTCHNER pray for relief

as hereunder appears.

## FIFTH CLAIM

### Unwarranted Interference with Familial Association

### (U.S. Const. Amend. I; 42 U.S.C. § 1983)

109.     Plaintiffs S.B., KERRY CALVERT, and AARON KARTCHNER assert this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20.

110.     The allegations of the preceding paragraphs 1 to 86 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

111.     Plaintiffs S.B., KERRY CALVERT, and AARON KARTCHNER shared a close relationship and special bond with TOMI KARTCHNER, their biological family member, which included deep attachments, commitments, and distinctively personal aspects of their lives and was typical of a close familial relationship.

112.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATHSAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20 caused termination of and interference with Plaintiffs S.B., KERRY CALVERT, and AARON KARTCHNER's familial relationship with TOMI KARTCHNER, including by exhibiting deliberate indifference to TOMI KARTCHNER's need for mental health care or treatment, in violation of the First Amendment to the U.S. Constitution.

113.     Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

114.     Plaintiffs S.B., KERRY CALVERT, and AARON KARTCHNER were injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH,

31

SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20's actions and inactions, entitling them to receive compensatory and nominal damages against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20; and punitive damages against Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20

WHEREFORE, Plaintiffs S.B., KERRY CALVERT, and AARON KARTCHNER pray for relief as hereunder appears.

## SIXTH CLAIM

### Failure to Summon Medical Care

### (Cal. Gov. Code § 845.6)

115.   Plaintiff ESTATE OF TOMI KARTCHNER (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20.

116.   The allegations of the preceding paragraphs 1 to 86 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

117.   Defendants CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20 knew or had reason to know that TOMI KARTCHNER was in need of immediate medical care and failed to take reasonable action to summon such medical care, in violation of California Government Code § 845.6.

118.   Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH maintained policies or customs of action and inaction resulting in harm to TOMI KARTCHNER, in violation of California Government Code § 845.6.

119.   Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH are vicariously liable, including

32

through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of agents and employees acting within the scope of employment, including Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and/or DOE 1 to 20.

120.    Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

121.    TOMI KARTCHNER was injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF TOMI KARTCHNER to receive compensatory damages against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20; and punitive damages against Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF TOMI KARTCHNER prays for relief as hereunder appears.

## SEVENTH CLAIM

### Failure to Produce Patient Records

### (Cal. Evid. Code § 1158)

122.    Plaintiffs ESTATE OF TOMI KARTCHNER (pursuant to Cal. Code Civ. Proc. § 377.30) and S.B. assert this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH.

123.    The allegations of the preceding paragraphs 1 to 74 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

124.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH failed to produce TOMI KARTCHNER's records, including in a timely and complete manner, in violation of California Evidence Code § 1158.

125.    Plaintiffs ESTATE OF TOMI KARTCHNER and S.B. were injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH's actions and inactions, entitling them to receive reasonable expenses against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH.

WHEREFORE, Plaintiffs ESTATE OF TOMI KARTCHNER and S.B. pray for relief as hereunder appears.

## EIGHTH CLAIM

### Tom Bane Civil Rights Act

### (Cal. Civ. Code § 52.1)

126.    Plaintiffs ESTATE OF TOMI KARTCHNER (pursuant to Cal. Code Civ. Proc. § 377.30), S.B., KERRY CALVERT, and AARON KARTCHNER assert this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20.

127.    The allegations of the preceding paragraphs 1 to 125 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

Deliberate Indifference / Special Relationship

128.    Defendants CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20 intentionally refused to provide TOMI KARTCHNER with necessary mental health care or treatment, or refused to transfer TOMI KARTCHNER to a facility that could provide such necessary medical care or treatment, putting TOMI KARTCHNER at substantial risk of suffering serious harm, and did not take reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the

34

high degree of risk involved, with specific intent (*i.e.*, deliberate indifference or reckless disregard), in violation of the Fourteenth Amendment to the U.S. Constitution; and Article I, Section 7(a) of the California Constitution.

129.   Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH maintained policies or customs of action and inaction and knew or should have known that officials under their command were inadequately trained, supervised, or disciplined resulting from either the lack of proper training, pursuant to policy, or the result of the lack of policy, with specific intent (*i.e.*, deliberate indifference or reckless disregard), in violation of the Fourteenth Amendment to the U.S. Constitution; and Article I, Section 7(a) of the California Constitution.

Section 504 of the Rehabilitation Act & Title II of the Americans with Disabilities Act

130.   Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20 failed reasonably to accommodate TOMI KARTCHNER's disability, where they could have provided a reasonable accommodation, including by: (a) providing TOMI KARTCHNER with necessary mental health care or treatment; (b) transferring TOMI KARTCHNER to a facility that could provide necessary mental health care or treatment; and/or (c) classifying, housing, and supervising TOMI KARTCHNER based on her impairment, where she would receive adequate and necessary mental health care or treatment and/or be prevented from self-harm, with deliberate indifference or reckless disregard, with specific intent (*i.e.*, deliberate indifference or reckless disregard), in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*

Failure to Summon Medical Care or Treatment

131.   Defendants CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20 knew or had reason to know that TOMI KARTCHNER was in need of immediate medical care and failed to take reasonable action to summon such medical care, with specific intent (*i.e.*, deliberate indifference or reckless disregard), in violation of California Government Code § 845.6.

132.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH maintained policies or customs of action and inaction resulting in harm to TOMI KARTCHNER, with specific intent (*i.e.*, deliberate indifference or reckless disregard), in violation of California Government Code § 845.6.

Failure to Staff and Monitor

133.    Defendants CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20 failed to conduct visual safety checks and remain accessible to TOMI KARTCHNER, with specific intent (*i.e.*, deliberate indifference or reckless disregard), in violation of California Code of Regulations tit. 15 § 1027 *et seq*.

134.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH maintained policies or customs of action and inaction resulting in harm to TOMI KARTCHNER, with specific intent (*i.e.*, deliberate indifference or reckless disregard), in violation of California Code of Regulations tit. 15 § 1027 *et seq*.

Failure to Produce Patient Records

135.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH failed to produce TOMI KARTCHNER's records, including in a timely and complete manner, with specific intent (*i.e.*, deliberate indifference or reckless disregard), in violation of California Evidence Code § 1158.

Unwarranted Interference with Familial Association

136.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20 caused termination of and interference with Plaintiffs S.B., KERRY CALVERT, and AARON KARTCHNER's familial relationship with TOMI KARTCHNER, including by exhibiting deliberate indifference to TOMI KARTCHNER's need for mental health care or treatment, with specific intent (*i.e.*, deliberate indifference or reckless disregard), in violation of the First and Fourteenth Amendments to the U.S.

36

Constitution; and Article I, Section 7(a) of the California Constitution.

(Allegations Common to All Theories)

137.    Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH are vicariously liable, including through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of agents and employees acting within the scope of employment, including Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and/or DOE 1 to 20.

138.    Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

139.    TOMI KARTCHNER and Plaintiffs S.B., KERRY CALVERT, and AARON KARTCHNER were injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20's actions and inactions, entitling Plaintiffs ESTATE OF TOMI KARTCHNER, S.B., KERRY CALVERT, and AARON KARTCHNER to receive compensatory and treble damages and civil penalties against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20; and punitive damages against Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20.

WHEREFORE, Plaintiffs ESTATE OF TOMI KARTCHNER, S.B., KERRY CALVERT, and AARON KARTCHNER pray for relief as hereunder appears.

**NINTH CLAIM**

**Intentional Infliction of Emotional Distress**

140.    Plaintiff ESTATE OF TOMI KARTCHNER (pursuant to Cal. Code Civ. Proc. § 377.30)

37

asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20.

141.   The allegations of the preceding paragraphs 1 to 86 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

142.   Defendants CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20 engaged in outrageous conduct, with intent or reckless disregard of the probability that TOMI KARTCHNER would suffer emotional distress and she did suffer severe emotional distress, including by: (a) exhibiting deliberate indifference to TOMI KARTCHNER's need for mental health care or treatment; (b) failing reasonably to accommodate TOMI KARTCHNER's impairment; (c) failing timely to summon medical care, in violation of California Government Code § 845.6; and/or (d) failing to comply with California Code of Regulations tit. 15 § 1027 *et seq*.

143.   Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH engaged in outrageous conduct, with intent or reckless disregard of the probability that TOMI KARTCHNER would suffer emotional distress and she did suffer severe emotional distress, including by maintaining policies or customs of action and inaction which resulted in harm to TOMI KARTCHNER, in violation of California Government Code § 845.6 and California Code of Regulations tit. 15 § 1027 *et seq*.

144.   Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH are vicariously liable, including through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of agents and employees acting within the scope of employment, including Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and/or DOE 1 to 20.

145.   Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20's actions

38

1  and inactions constituted oppression, fraud, and/or malice resulting in great harm.

2       146.    TOMI KARTCHNER was injured as a direct and proximate result of Defendants

3  COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE,

4  CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA

5  OLVERA, DYLAN FULCHER, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE

6  OF TOMI KARTCHNER to receive compensatory damages against of Defendants COUNTY OF

7  MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA

8  FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN

9  FULCHER, and DOE 1 to 20; and punitive damages against of Defendants VERNON WARNKE,

10  CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA

11  OLVERA, DYLAN FULCHER, and DOE 1 to 20.

12       WHEREFORE, Plaintiff ESTATE OF TOMI KARTCHNER prays for relief as hereunder

13  appears.

14                          **TENTH CLAIM**

15                           **Negligence**

16       147.    Plaintiff ESTATE OF TOMI KARTCHNER (pursuant to Cal. Code Civ. Proc. § 377.30)

17  asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S

18  OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH,

19  SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20.

20       148.    The allegations of the preceding paragraphs 1 to 86 are realleged and incorporated, to the

21  extent relevant and as if fully set forth in this Claim.

22       149.    Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba

23  WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20 owed

24  TOMI KARTCHNER a duty of care and breached that duty, including by: (a) exhibiting deliberate

25  indifference to TOMI KARTCHNER's need for mental health care or treatment; (b) failing reasonably to

26  accommodate TOMI KARTCHNER's impairment; (c) failing timely to summon medical care, in

27  violation of California Government Code § 845.6; and/or (d) failing to comply with California Code of

28  Regulations tit. 15 § 1027 *et seq*.

150.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH owed TOMI KARTCHNER a duty of care and breached that duty, including by maintaining policies or customs of action and inaction which resulted in harm to TOMI KARTCHNER, in violation of California Government Code § 845.6 and California Code of Regulations tit. 15 § 1027 *et seq*.

151.     Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH are vicariously liable, including through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of agents and employees acting within the scope of employment, including Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and/or DOE 1 to 20.

152.     Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

153.     TOMI KARTCHNER was injured as a direct and proximate result of Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20's actions and inactions, entitling Plaintiff ESTATE OF TOMI KARTCHNER to receive compensatory damages against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20; and punitive damages against Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20.

WHEREFORE, Plaintiff ESTATE OF TOMI KARTCHNER prays for relief as hereunder appears.

\ \ \

**ELEVENTH CLAIM**

**Wrongful Death**

**(Cal. Code Civ. Proc. § 377.60)**

154. Plaintiff S.B. asserts this Claim against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20.

155. The allegations of the preceding paragraphs 1 to 86 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

156. Defendants CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20 caused TOMI KARTCHNER's death by wrongful act or neglect, including by: (a) exhibiting deliberate indifference to TOMI KARTCHNER's need for mental health care or treatment; (b) failing reasonably to accommodate TOMI KARTCHNER's impairment; (c) failing timely to summon medical care, in violation of California Government Code § 845.6; and/or (d) failing to comply with California Code of Regulations tit. 15 § 1027 *et seq*.

157. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH caused TOMI KARTCHNER's death by wrongful act or neglect, including by maintaining policies or customs of action and inaction which resulted in harm to TOMI KARTCHNER.

158. Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, and CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH are vicariously liable, including through the principles of *respondeat superior* and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of agents and employees acting within the scope of employment, including Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and/or DOE 1 to 20.

159. Defendants VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba

41

1    WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20's actions

2    and inactions constituted oppression, fraud, and/or malice resulting in great harm.

3        160.    Plaintiff S.B. was injured as a direct and proximate result of Defendants COUNTY OF

4    MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA

5    FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN

6    FULCHER, and DOE 1 to 20's actions and inactions, entitling her to receive compensatory damages

7    against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON

8    WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO,

9    TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20; and punitive damages against Defendants

10   VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN

11   KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20.

12       WHEREFORE, Plaintiff S.B. prays for relief as hereunder appears.

13                          **PRAYER FOR RELIEF**

14       WHEREFORE, Plaintiffs ESTATE OF TOMI KARTCHNER, S.B., KERRY CALVERT, and

15   AARON KARTCHNER seek Judgment as follows:

16       1.      For an award of compensatory, general, special, and nominal damages (including survival

17   damages and wrongful death damages under federal and state law) against Defendants COUNTY OF

18   MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA

19   FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN

20   FULCHER, and DOE 1 to 20, in excess of $30,000,000, according to proof at trial;

21       2.      For an award of exemplary/punitive damages against Defendants VERNON WARNKE,

22   CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA

23   OLVERA, DYLAN FULCHER, and DOE 1 to 20, in an amount sufficient to deter and to make an

24   example of them, because their actions and/or inactions, as alleged, were motivated by evil motive or

25   intent, involved reckless or callous indifference to constitutionally and statutorily protected rights, or

26   were wantonly or oppressively done, and/or constituted oppression and/or malice resulting in great harm;

27       3.      For funeral and/or burial expenses;

28       4.      For an award of actual damages, treble damages, punitive damages, civil penalties, and

                                    42

any other available relief against Defendants COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CALIFORNIA FORENSIC MEDICAL GROUP dba WELLPATH, SAETERN KAO, TERESA OLVERA, DYLAN FULCHER, and DOE 1 to 20, pursuant to California Civil Code §§ 52, 52.1, and any other statute as may be applicable (except that no punitive damages are sought against Defendants COUNTY OF MERCED and MERCED COUNTY SHERIFF'S OFFICE, pursuant to California Civil Code § 818);

5.     For interest;

6.     For an award of attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794, 42 U.S.C. § 12205, California Civil Code § 52.1, California Code of Civil Procedure § 1021.5, California Evidence Code § 1158, and any other statute as may be applicable; and

7.     For an award of any other further relief, as the Court deems fair, just, and equitable.

Dated: December 1, 2023                                    Respectfully Submitted,

By: _____
        Mark E. Merin
        Paul H. Masuhara
        LAW OFFICE OF MARK E. MERIN
        1010 F Street, Suite 300
        Sacramento, California 95814
        Telephone: (916) 443-6911
        Facsimile: (916) 447-8336

        Attorneys for Plaintiffs
        ESTATE OF TOMI KARTCHNER, S.B.,
        KERRY CALVERT, and AARON KARTCHNER

43

## JURY TRIAL DEMAND

A JURY TRIAL IS DEMANDED on behalf of Plaintiffs ESTATE OF TOMI KARTCHNER, S.B., KERRY CALVERT, and AARON KARTCHNER.

Dated: December 1, 2023                    Respectfully Submitted,

By: _____
    Mark E. Merin
    Paul H. Masuhara
    LAW OFFICE OF MARK E. MERIN
    1010 F Street, Suite 300
    Sacramento, California 95814
    Telephone: (916) 443-6911
    Facsimile: (916) 447-8336

    Attorneys for Plaintiffs
    ESTATE OF TOMI KARTCHNER, S.B.,
    KERRY CALVERT, and AARON KARTCHNER