# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ESTATE OF TOMI KARTCHNER, et al.,

Plaintiffs,

v.

COUNTY OF MERCED, et al.,

Defendants.

Case No. 1:23-cv-1672-KES-EGC

**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL AND MOTION FOR EXPENSES**

(Doc. 83)

Pending before the Court is Plaintiff Estate of Tomi Kartchner ("Estate's") Motion to Compel Defendant California Forensic Medical Group DBA Wellpath ("CFMG") to produce documents identified on CFMG's January 5, 2026 privilege log as "Part III of Mortality and Morbidity Review Report on patient Tomibella Kartchner." (*See* Docs. 83, 89). The parties filed their Joint Statement on June 17, 2025.

The Court reviewed the parties' papers and all supporting material and found the matter suitable for decision without oral argument pursuant to U.S. District Court for the Eastern District of California's Local Rule 230(g). Accordingly, the hearing set for July 1, 2025, was vacated.

For the reasons set forth below, Plaintiff's motion will be granted.

## I. BACKGROUND

Plaintiffs filed a First Amended Complaint on June 19, 2024, alleging constitutional claims and related tort actions against Defendants arising from the May 25, 2023, in-custody death of 28-year-old Tomi Kartchner at the John Latorraca Correctional Center in Merced, California. (Doc.

38). CFMG filed a Motion to Strike and Motion to Dismiss the Amended Complaint on August 2, 2024, which is pending before District Judge Kirk E. Sheriff.[1] (Doc. 48). Thereafter, on March 17, 2025, pursuant to proceedings in Bankruptcy Court, the case was stayed until May 20, 2025. (Docs. 70, 74). In light of the pending motion to dismiss, the Court has continued the Initial Scheduling Conference several times and has not issued a scheduling order. (*See* docket).

On February 28, 2024, Plaintiff served CFMG with requests for production, set one. (Doc. 89 at 3). Therein, Plaintiff requested: "All DOCUMENTS relating to the County of Merced's investigation of Tomi Kartchner's death—including: reports, correspondence, statements, memos, letters, emails, and video/audio recordings." (Doc. 89 at 2). On April 29, 2024, CFMG served discovery responses and stated: "CFMG further objects to this Request to the extent it calls for materials protected from discovery by quality assurance privileges, including, but not limited to privileges conferred by 42 C.F.R. §§ 3.204 and/or 483.75(h)." (Doc. 89 at 3). Nearly one and a half years later, five months after the bankruptcy stay was lifted, Plaintiff's counsel sent Defendant's counsel a meet-and-confer letter, stating that CFMG's objections were insufficient because "they fail to identify any allegedly privileged documents withheld from production on a requisite privilege log which explains the basis of the privilege asserted." (Doc. 89 at 4). Thereafter, on December 23, 2025, CFMG's counsel responded that it will not produce Part III of the report and on January 5, 2026, served supplemental discovery responses with a privilege log. (Doc. 89 at 4).

After meeting and conferring over the dispute, Plaintiff filed the instant motion to compel against CFMG on June 3, 2026. (Doc. 87). Plaintiff seeks to compel production of withheld discovery responses to its requests for production, namely the medical report identified as "Part III of the Mortality and Morbidity Review Report on Tomibella Kartchner" (hereinafter the

[1] The longstanding judicial emergency in the Eastern District of California has been greatly exacerbated by historic numbers of new immigration cases being filed. Our federal judicial district currently has one of the largest volumes of immigration habeas petitions in the nation. The impact of the unprecedented volume of new immigration cases on our district, which was already under a longstanding judicial crisis, is far-reaching and includes significant delays in the resolution of other federal cases filed in this district.

"Report"). Defendants oppose on the basis of statutory privilege. Plaintiff also seeks expenses, including attorneys' fees and costs in the amount of $9,800.00. (Doc. 89-10).

## II. LEGAL STANDARD

Under Rule 37 of the Federal Rules of Civil Procedure, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). The court may order a party to provide further responses to an "evasive or incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a)(4). "District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'" *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) (quoting *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011)).

Federal Rule of Civil Procedure 26(b)(1) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Information within the scope of discovery "need not be admissible in evidence to be discoverable." *Id*. A "relevant matter" under Rule 26(b)(1) is any matter that "bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, (1978). Relevancy should be "construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (quoting *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992)).

Rule 26(b)(5) addresses claims of privilege and provides:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed ... in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5). Thus, parties must "provide a log or its equivalent when they withhold information on grounds of privilege." *Allen v. Woodford*, No. CV-F 05-1104 OWW-LJO, 2007 WL 309485, at *4 (E.D. Cal. Jan. 30, 2007).

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)." *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) (citing *Soto*, 162 F.R.D. at 610). In turn, the party opposing the discovery "has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *Id.* (citing *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)). The Court is vested with broad discretion to manage discovery. *See Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012); *Survivor Media, Inc. v. Survivor Prods*., 406 F.3d 625, 635 (9th Cir. 2005).

## III. DISCUSSION

Plaintiff's Request for Production, set one, no. 1 seeks documents "relating to the County of Merced's investigation of Tomi Kartchner's death—including reports, correspondence, statements memos, letters, emails, and video/audio recordings. (Doc. 89-1 at 8). Plaintiff moves to compel the production of the Report.[2]

CFMG timely objected to the request on April 29, 2024 (after an extension was granted). (Doc. 89 at 4, Doc. 89-1 at 25). "CFMG further objects to this Request to the extent it calls for materials protected from discovery by quality assurance privileges, including, but not limited to privileges conferred by 42 C.F.R. §§ 3.204 and/or 483.75(h), California Evidence Code sections 1151, 1156.1 and 1157 and all other state or federal statutes or common law doctrines addressing remedial measures, peer review, or self-critical analysis. *See e.g. County of Los Angeles v. Superior Court* 139 Cal.App.4th 8 (2006)." (*Id.*). CFMG contends that the Report is privileged under the Patient Safety and Quality Improvement Act, ("PSQIA") 42 U.S.C. § 299b-21, et seq., and that Plaintiff's Motion to Compel is untimely. (*Id.*). Conversely, Plaintiff argues that the Report is an unprivileged, "dual-purpose" document falling outside the scope of the PSQIA.

[2] Plaintiff's Requests for Production (Set One) Nos. 2–8 and 9–11 seek substantially similar categories of documents and reports from different defendants. CFMG asserted a PSQIA privilege objection (among other objections) to Requests Nos. 1–26, 28, 29, 31, 33, 35, 38, 45, and 59–62. Because the parties' briefing focuses exclusively on whether the PSQIA privilege protects the Report, the Court limits its review to this single issue.

Plaintiff further asserts that CFMG waived its privilege objection by failing to produce a timely privilege log. The Court addresses each of these arguments below.

**A. Timeliness of Motion to Compel**

As an initial matter, the Court has broad authority to manage its docket and control discovery. *See, e.g., Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) ("broad discretion is vested in the trial court to permit or deny discovery"); *see also Faigin v. Kelly*, 184 F.3d 67, 84 (1st Cir. 1999) ("A district court's case-management powers apply with particular force to the regulation of discovery and the reconciliation of discovery disputes"). Thus, the untimeliness of a motion to compel "is sufficient ground, standing alone, to deny a discovery motion." *KST Data, Inc. v. DXC Tech. Co.*, 344 F. Supp. 3d 1132, 1136 n.1 (C.D. Cal. 2018) (quoting *Williams v. Las Vegas Metro. Police Dept.*, 2015 WL 3489553 at *1 (D. Nev. June 3, 2015)). Indeed, courts "will often deny Rule 37(a) motions because the moving party delayed too long." 8B Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice & Procedure*, § 2285 (3d ed. Supp. 2019) (collecting cases).

A responding party that objects to discovery requests is required to state objections with specificity. *See* Fed. R. Civ. P. 33(b)(4), 36(a)(5). If the party requesting discovery is dissatisfied with any of the responses, the party may move to compel further responses. "A motion to compel may be filed when a party disagrees with the objections interposed by the other party and wants to compel more complete answers." *Nei v. Travelers Home & Marine Ins. Co.*, 326 F.R.D. 652, 656 (D. Mont. 2018). "Although neither the Federal Rules nor the Local Rules sets a deadline to file motions to compel," "[p]arties may not unduly delay in filing motions to compel no matter their merit." *KST Data, Inc. v. DXC Tech. Co.*, 344 F. Supp. 3d 1132, 1136 n.1 (C.D. Cal. 2018). Even in the absence of bad faith or negligence, a failure to timely move to compel can carry consequences limiting everyone's options, including the court's. *Id.* "[W]hen parties delay discovery for any reason, they do so at their peril." *Wyles v. Sussman*, 445 F. Supp. 3d 751, 756 (C.D. Cal. 2020).

To determine whether a motion to compel is timely, the Court must review "the circumstances specific to each case." *KST Data*, 344 F. Supp. 3d 1136 n.1 (internal quotation marks, citation omitted); *see also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 333 (N.D. Ill. 2005) (noting timeliness is based on "the entire complex of circumstances that gave rise to the motion, and what is untimely in one case may not be in another"). In general, the filing of a motion to compel discovery before the ordered deadline supports a finding the motion is timely, and a finding of untimeliness in that scenario will be rare. *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999). On the other hand, courts have repeatedly denied motions filed after the close of discovery as untimely. *See, e.g., Gault*, 184 F.R.D. at 622 (motion to compel filed 136 days after defendant's initial responses and close of discovery was untimely); *Cottrell v. Wright*, 2012 WL 3535838 at *2 (E.D. Cal. Aug. 15, 2012) (denying a motion as untimely when the "plaintiff's motion to compel was filed over three months after the discovery deadline [ ] and over three months after he received defendants' responses to his discovery requests").

The Court in this matter has not set a Scheduling Order with deadlines for discovery. (*See* Docket). Plaintiff's explanation for the delay in filing, namely that the stay in this case precluded earlier action is persuasive. The parties' meet and confer efforts to resolve their discovery issues were meaningful, if not completely successful. The Court finds that the motion was timely.

We now turn to whether there was waiver of the PQSIA privilege.

**B. Waiver of Privilege and the *Burlington Northern* Factors**

We first address whether CFMG's nearly two-year delay in providing a privilege log waived its objections to production. The Ninth Circuit Court of Appeals analyzed Rule 26(b)(5)'s notice requirement and how it relates to Rule 34's 30-day deadline in *Burlington Northern & Santa Fe Ry. Co. v. United States,* 408 F.3d 1142, 1149 (9th Cir. 2005). The Court of Appeals held that inserting "boilerplate" privilege objections into responses to a Rule 34 request for production is insufficient. *Burlington N.*, 408 F.3d at 1149. With respect to asserting privilege objections within the 30-day period envisioned by Rule 34, however, the Court of Appeals also rejected a *per se* waiver rule that would deem a privilege to be automatically waived if not asserted within Rule 34's 30–day period. *Id.; accord Coalition for a Sustainable*

*Delta,* 2009 WL 3378974, at *3 ("The Ninth Circuit rejected a per se rule that 'failure to produce a privilege log in a timely manner triggers a waiver of privilege,' noting that Rule 26's requirement for proper assertion of a privilege does not correlate with Rule 34's 30-day deadline for serving written responses to discovery requests, 'nor does it explicitly articulate a waiver rule.'") (citing *Burlington Northern*); *Jumping Turtle Bar and Grill v. City of San Marcos,* No. 10-CV-270-IEG-BGS, 2010 WL 4687805, at *2 (S.D. Cal. Nov 10, 2010) (unpublished) ("The *Burlington* court held that boilerplate objections in initial responses fail to adequately assert the privilege and that a later-produced privilege log could sufficiently assert privileges for the first time. Therefore, the City's failure to assert inadequate boilerplate assertions within Rule 34's 30-day time period can't operate as a per se waiver of the privilege and the Court will apply the *Burlington* factors in order to determine the issue of waiver.").

Using Rule 34's 30-day period as a "default guideline," the *Burlington Northern* court directed district courts to make "a case-by-case determination" of whether a privilege objection was sufficiently raised. *Burlington N.*, 408 F.3d at 1149. This determination should take several factors into account. *Id.* First, the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient). *Id.* Second, the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient). *Id.* Third, the court weighs the magnitude of the document production and, fourth, any other particular circumstances of the litigation that make responding to discovery unusually easy (such as the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard. *Id.* These factors "should be applied in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process." *Id.* Likewise, "[t]hey should not be applied as a mechanistic determination of whether the information is provided in a particular

format." *Id.* The application of these factors shall also be subject to "agreements or stipulations among the litigants" and discovery or protective orders. *Id.*

The first factor weighs against waiver. Although CFMG made only a general assertion of privilege, it eventually produced a privilege log, albeit not timely. District courts applying the *Burlington Northern* factors often decline to find waiver of privilege where a party first raises insufficient boilerplate privilege objections in its RFP responses then raises the objections in an untimely yet detailed privilege log. *See, e.g., Best Buy Stores, L.P. v. Manteca Lifestyle Ctr.*, LLC, No. 2:10–cv–0389-WBS-KJN, 2011 WL 2433655, at *6 (E.D. Cal. June 14, 2011) (citations omitted); *Carl Zeiss Vision Int'l GmbH v. Signet Armorlite*, No. CIV 07CV-0894 DMS-POR, 2009 WL 4642388, at *3–4 (S.D. Cal. Dec. 1, 2009). The privilege log at issue is sufficiently detailed and "describe[s] the nature of the documents, communications, or tangible things not produced or disclosed … in a manner that … will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); *see, e.g., Estate of Thomas v. County of Sacramento*, 2021 U.S. Dist. LEXIS 239058, at *4 (E.D. Cal. Dec. 13, 2021) ("[withholding] party must describe the nature of the communications or documents in a way that will enable other parties to assess the claim" (citation omitted)). Thus, CFMG's privilege log meets the Ninth Circuit's sufficiency requirements.

The second factor also weighs slightly against waiver. As stated above, CFMG timely made its objection on the basis of PQSIA privilege on April 29, 2024. (Doc. 89 at 4). Plaintiff did not raise any issue with CFMG's response until October 31, 2025. (*Id.*). Thereafter, the privilege log was produced on January 5, 2026. (*Id.*). The Court finds persuasive *Khasin v. Hershey Co.*, No. 5:12-cv-01862-EJD-PSG, 2014 WL 690278, at *5 (N.D. Cal. Feb. 21, 2014), which found that a seven-month delay in producing a privilege log was not unreasonable when the requesting party had also delayed in making an inquiry. Given these circumstances, including the Bankruptcy Court's stay, the Court finds that the delay in producing a privilege log was not unreasonable, and will not weigh the timeliness factor in favor of finding waiver.

The third and fourth factors weigh slightly towards waiver. CFMG contends that because only a single document is being withheld, Plaintiff has suffered minimal prejudice from the delay. (Doc. 89 at 16). It is correct that "[M]ost courts analyze this factor in terms of the magnitude of

the document production in the entire case compared to the magnitude of the specific documents subject to the waiver analysis." *Goro v. Flowers Foods, Inc.*, No. 17-CV-02580-JLS-JLB, 2019 WL 6252499, at *14 (S.D. Cal. Nov. 22, 2019). However, CFMG's insistence that there is only one document at issue does nothing to provide clarity to the Court on the size or scope of the withheld Report. Because CFMG has failed to provide this information, the Court can't ascertain whether the magnitude of production would be burdensome and oppressive. Furthermore, while CFMG's delay may not stem from pure gamesmanship, *see Jumping Turtle Bar & Grill*, 2010 WL 4687805, at *4, CFMG has failed to identify any unique circumstance that would make responding to discovery unusually difficult. Given CFMG's extensive experience and sophistication in this specific type of litigation, (*see* Doc. 89 at 8–9), timely compliance would likely not have been burdensome.

In light of the totality of these circumstances, the Court finds that CFMG has not waived privilege with respect to the Report. Having determined that the privilege objections are preserved, the discussion now turns to the merits of the motion.

**C. Applicability of the PSQIA Privilege**

The PSQIA establishes a federal privilege for "patient safety work product" ("PSWP"). 42 U.S.C. § 299b-22(a). The PSQIA defines three categories of PSWP: (1) materials "assembled or developed by a provider for reporting to a patient safety organization[3] and are reported to a patient safety organization . . . and which could result in improved patient safety, health care quality, or health care outcomes," 42 U.S.C. § 299b-21(7)(A)(i)(I) (the "Reporting Prong"); (2) materials "developed by a patient safety organization for the conduct of patient safety activities; and which could result in improved patient safety, health care quality, or health care outcomes," 42 U.S.C. § 299b-21(7)(A)(i)(II) (the "PSO-Development Prong"), and (3) materials that "identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to, a patient safety evaluation system," 42 U.S.C. § 299b-21(7)(A)(ii) (the "Deliberations Prong").

---

[3] A "patient safety organization" ("PSO") is defined in the statute as "a private or public entity or component thereof" that is listed by the Secretary of Health and Human Services as a qualifying entity. 42 U.S.C. § 299b-21(4). A "patient safety evaluation system" is defined in the statute as "the collection, management, or analysis of information for reporting to or by a patient safety organization." 42 U.S.C. § 299b-21(6). The parties do not appear to dispute that CFMG is a PSO.

However, the PSQIA excludes from the definition of PSWP "information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system." 42 U.S.C. § 299b-21(B)(ii). "Reports created for external obligations, such as mandatory requirements placed upon providers by state health regulatory agencies, are not privileged, even if the reports are also shared to a PSO." *K. C. v. Cnty. of Alameda*, No. 22-CV-01817-DMR, 2024 WL 4008762, at *2 (N.D. Cal. Aug. 29, 2024).

Courts carefully scrutinize the assertion of the PSQIA privilege and generally require factual assertions to be supported by evidence. *Estate of Hultman v. Cnty. of Ventura*, No. CV 21-06280 DSF-RAOX, 2022 WL 2101723, at *5 (C.D. Cal. May 16, 2022). As the party claiming the privilege, Defendant bears the burden of showing that the withheld portions of the Report are protected PSWP under the PSQIA. *Id.*; *see also Doe v. Pasadena Hosp. Ass'n, Ltd.*, No. 2:18-cv-08710-ODW-MAA, 2021 WL 4557221, at *18 (C.D. Cal. June 7, 2021) ("As the parties claiming the privilege, Defendants bear the burden of showing that the requested information falls within the PSQIA privilege.").

Defendant asserts that the designation and treatment of the Report as PSWP is evidence that they are PSWP. (Doc. 89 at 12–13). The only evidence offered by Defendant is its privilege log, which includes the title of the document, name of the author, location of the document and the date on which the report was submitted to the PSO recipient. (Doc. 89 at 15). While the Court ruled that this information is sufficiently detailed for purposes of the motion to compel, it is insufficient to establish that the Report is PSWP. *See Estate of Hultman v. Cnty. of Ventura*, No. CV 21-06280 DSF-RAOX, 2022 WL 2101723, at *5 (C.D. Cal. May 16, 2022) (requiring factual assertions to be supported by evidence). Defendant does not provide evidence to show that the purpose of the creation of the Report was to submit it to a PSO. Later reporting such a document to a PSO does not then make that information PSWP. 42 U.S.C.A. § 299b-21(7)(B)(ii). Defendant's own documents provide support for the assertion that the Report was created for a dual purpose and was shared externally with members of the Merced County Sherriff's Office personnel. (Doc. 89-1 at 108). *See K. C. v. Cnty. of Alameda*, No. 22-CV-01817-DMR, 2024 WL 4008762, at *6 (N.D. Cal. Aug. 29, 2024) (finding that defendant failed to offer sufficient reliable

evidence to meet its burden and refute plaintiff's assertion that its report had a dual purpose). The burden is on Defendant to establish application of the PSQIA privilege to the Report and the Court concludes that Defendant has not met its burden.

Plaintiff raises alternative arguments under the PSO Development Prong and the Deliberations Prong.[4] The court need not consider these arguments because it has already determined the Report is a dual-purpose document and thus is not privileged.

## IV. MOTION FOR EXPENSES

Federal Rule of Civil Procedure 37(a)(5) states, "if the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." However, "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).

"A request for discovery is "substantially justified" under Rule 37 if "reasonable people could differ on the matter in dispute." *Morgan Hill Concerned Parents Ass'n v. California Dep't of Educ.*, No. 2:11-CV-03471-KJM-AC, 2017 WL 3116818, at *5 (E.D. Cal. July 21, 2017).

It is "for the court to decide what amount is proper" in evaluating a request for expenses. 8B Wright, Miller & Marcus, Federal Practice & Procedure, § 2288 (3d ed. 2010 and supp.). An appellate court reviews an award of fees or sanctions for abuse of discretion. *R&R Sails, Inc. v. Insurance Co. of Pennsylvania*, 673 F.3d 1240, 1245 (9th Cir. 2012); *Republic of Ecuador v. Mackay*, 742 F.3d 860, 864 (9th Cir. 2014).

In the fee opposition section, CFMG argues that it was substantially justified in its position regarding the application of the PSQIA privilege. (Doc. 89 at 25–26). The Court is convinced in that regard, as it found no waiver of privilege based on timeliness and there was a legitimate

[4] Defendant did not offer any alternative arguments in support of its assertion of PSQIA privilege.

dispute about the application of a federal privilege. However, because Plaintiff's motion was ultimately successful, the Court will award fees as a matter of equity. "The district court has "a great deal of discretion" to award fees and to determine what amount of fees is reasonable." *Six v. IQ Data Int'l, Inc.*, No. 23-15887, 2025 WL 586559, at *2 (9th Cir. Feb. 24, 2025). Plaintiff requested $9,800.00 for 24 hours of work completed by Attorneys Merin and Masuhara at the rates of $600 and $400 per hour, respectively. Here, the Court finds Mr. Merin's and Mr. Masuhara's billing rate to be reasonable. *See I.H. v. California*, No. 2:19-CV-02343-DAD-AC, 2025 WL 1158975, at *21–24 (E.D. Cal. Apr. 21, 2025) (awarding fees in excess of $500 per hour and discussing Mr. Merin's experience in this District). To balance Plaintiff's ultimate success against the substantial justification of CFMG's opposition, equity requires a proportional reduction in the total recovery rather than a disruption of established market rates. In lieu of reducing the billing rate, the Court reduces the award of attorneys' fees by twenty-five percent, from the requested $9,800.00 to $7,350.00.[5] This exercise of the Court's equitable judgment is consistent with Ninth Circuit precedent allowing a percentage-based haircut where the court provides a clear, case-specific rationale. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

## V. CONCLUSION AND ORDER

Defendant has not met its burden of establishing that PQSIA privilege applies to the Report.[6]

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's Motion to Compel and Motion for Expenses, Doc. 83, is GRANTED;
2. Defendant SHALL pay to Plaintiff $7,350.00 within 21 days of this order; and
3. Defendant CFMG SHALL produce "Part III of the Mortality and Morbidity Review Report on Tomibella Kartchner" within twenty-one (21) days as set forth in this order.

---

[5] The Court expressly opines that the fee award in this action should not be considered a personal sanction on an attorney that is potentially reportable to the State Bar of California pursuant to Business and Professions Code section 6068(o)(3). *C.f. Medina v. United Parcel Service*, No. C-06-791 JW PVT, 2007 WL 2123699 (N.D. Cal. 2007) (state statute "exempts" discovery-related proceedings from self-reporting obligation).

[6] The parties are encouraged to meet and confer regarding a stipulated protective order to govern the production of the documents at issue should they deem it necessary. Any protected order, however, shall comply with the Local Rules.

IT IS SO ORDERED.

Dated: **August 3, 2026**

Erin Sug Castillo

UNITED STATES MAGISTRATE JUDGE